UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-22147-CIV-LENARD/GOODMAN

STERLING NATIONAL MORTGAGE CO., INC.,

    Plaintiff,

v.

INFINITE TITLE SOLUTIONS, LLC,
et al.
    Defendants.

_____/

## *SUPPLEMENTAL* SCHEDULING ORDER RE: PENDING MOTIONS

THIS MATTER is before the Court, *sua sponte,* concerning the January 6, 2011 hearing on two motions to dismiss (DE## 57 & 95) and Plaintiff's Motion for Default Final Judgment (DE# 55).

In the initial scheduling order (DE# 102), I asked the Parties to be prepared to discuss, *inter alia,* various subjects concerning the two RICO counts, including the issue of proximate causation. In its Response (DE# 103) to one of the motions to dismiss, Plaintiff noted (p. 13) that the RICO proximate causation issue had not been raised by other parties. Plaintiff then addressed the RICO proximate causation issue in its Response.

Plaintiff's theory of subject matter jurisdiction – the grounds for being in federal court in the first place – is based on the two RICO counts. Not only can subject matter jurisdiction never be forfeited or waived, but federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of

a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). *See also In Re Walker*, 515 F.3d 1204, 1210 (11th Cir. 2008) (court has the duty to "determine whether it has jurisdiction over a particular matter, even if doing so raises the issue *sua* sponte); *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (federal courts are required to inquire into subject matter jurisdiction "*sua sponte* whenever it may be lacking," a fundamental rule which caused the court to address jurisdiction even though the parties never raised the issue). Therefore, it is entirely appropriate for the Court to independently flag the issue and to ask the parties to be prepared to discuss a specific branch of the RICO subject matter jurisdiction issue at the hearing.

Having reviewed again the Complaint, the Civil Rico Case Statement (DE# 61),[1] Plaintiff's Response (DE# 103) and the two motions to dismiss (DE## 57 & 95), I think it would be helpful to flag additional issues which I anticipate will be discussed at the hearing.

In its most-recently filed submission concerning the RICO count (Response, DE# 103), Plaintiff again notes that the "central claim in this lawsuit arises out of **one** mortgage loan transaction funded by the Plaintiff for the purchase of **a** condominium." (*Id.* at p. 2.) (emphasis supplied). Although Plaintiff is only one of presumably many lenders who sustained damages flowing from defaulted loans taken out by other purchasers in the same condominium complex, it repeatedly makes allegations (in its

---

[1] Considering Plaintiff's Rico Case Statement is entirely appropriate when evaluating a motion to dismiss the RICO counts. *Old Time Enters., Inc. v. Int'l Coffee Corp.,* 862 F.2d 1213, 1218-19 (5th Cir. 1989) (considering RICO case statement in motion-to-dismiss analysis); *Allstate Ins. Co. v. Palterovich,* 653 F. Supp. 2d 1306, 1318 n.7 (S.D. Fla. 2009).

2

Complaint, Civil RICO Case Statement and Response) concerning alleged fraud and misconduct concerning *other* loans used by *other* buyers to purchase *other* apartments which were financed by loans made by *other* banks.

For example, in the Complaint, Plaintiff refers (¶ 49) to "at least 17 units . . . on which the lenders have moved to foreclose" as the "Conspiracy Foreclosure Transactions" and alleges a scheme to "lie to the lender**s**" (plural) (¶ 55) and (¶ 311) to solicit "person**s** [plural] . . . to obtain mortgage loan**s** [plural] based on material misrepresentations to the lender**s**" (plural). (emphasis supplied). Likewise, in its Civil RICO Case Statement, Plaintiff describes the alleged predicate acts of criminal activity in the purported pattern of racketeering activity to be, *inter alia*, the crimes of wire fraud, bank fraud and racketeering "by causing 17 mortgage loan**s** to be funded." (DE# 61, p. 8.) (emphasis supplied). And in its Response (DE 103, p. 15), Plaintiff similarly relies on alleged fraud affecting other purported victims – e.g., claiming that the RICO defendants "induc[ed] mortgage lender**s** [plural] to fund loan**s** [plural] for the purchase of Ibis Club condominium**s** based on overvalued appraisal**s** of those propertie**s** *such as* the Loan in this Transaction." (emphasis supplied).

Because there is only one Plaintiff (i.e., a lender) and because the central issue of this lawsuit is the purported fraud surrounding only the one condominium apartment which secured the Plaintiff lender's loan, the Parties should be prepared to discuss the following issues (in addition to the ones pinpointed in the initial scheduling order) at the hearing:

3

1. Can a RICO Plaintiff rely on alleged fraud affecting other, non-party victims to meet its statutory requirement to allege the requisite number and type of predicate acts of racketeering activity?

2. Does damage affecting other victims, even those similarly situated, such as other banks and lenders, assist the Plaintiff in stating a RICO and RICO conspiracy claim?

3. How can damages sustained by other victims who are not plaintiffs in this lawsuit be used to state a RICO claim when those damages did not proximately cause Plaintiff to sustain damages?

4. Do the predicate acts of racketeering activity need to damage this specific Plaintiff, or is it sufficient if they damage *someone*, regardless of whether it is this specific Plaintiff? For example, in its RICO Case Statement (p. 7), Plaintiff lists unnamed "Tenants at Ibis Club Condos," the "Public of Collier County, Florida" and "Other Lenders" as victims of the alleged RICO pattern. Does the law permit a plaintiff to use other crimes perpetrated against other victims as predicate acts to state a RICO claim by that one specific Plaintiff?

5. Assuming that a plaintiff must rely *only* on predicate acts affecting it and proximately causing its own damages, what are the specific dates of the alleged racketeering activity affecting this specific Plaintiff? And do those predicate acts occur over a long enough period of time to constitute a pattern?

In its Complaint (¶ 316) and in its RICO Case Statement (pp. 2, 3, 4, 5, 6, 8, 9, 10, 11, 12 and 13), Plaintiff alleges criminal violations of the Travel Act, 18 U.S.C. § 1952. Therefore:

6. How do the allegations in the Complaint, even supplemented by the RICO Case Statement, constitute Travel Act violations? What are the specific elements of a Travel Act violation, and how have they been sufficiently alleged in the Complaint?

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

I understand that Defendants Edelweiss, Inc., Ibis Club International, LLC and Wojtas are still entitled to submit a Reply in further support of their motion to dismiss (DE# 95) and nothing in this Supplemental Scheduling Order will prevent them from making such a submission.

Other than this potential Reply memorandum, however, no further briefing will be permitted before the January 6, 2011 hearing. If the parties wish to rely on any case not previously cited in a motion or memorandum, then they must file a list of supplemental authorities by no later than the close of business of January 4, 2011. This list shall be simply that – a list. No argument will be permitted in the list, which shall be limited to case law citations. The Parties may, if they chose to submit a list of supplemental authorities, include a brief, parenthetical summary of each case's significance, but the summary may not be more than one sentence. I will not consider at the hearing any legal

authority not previously cited in a motion, memorandum or list of supplemental authorities.

**DONE and ORDERED** in Chambers, at Miami, Florida, this 15th day of December, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

The Honorable Joan A. Lenard
United States District Judge

All counsel of record